[Cite as *State v. Urbina*, 2021-Ohio-4254.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 4-21-08

      v.

HYME J. URBINA,                      O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 4-21-09

      v.

HYME J. URBINA,                      O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Defiance County Common Pleas Court**
**Trial Court Nos. 05 CR 09186 and 05 CR 09264**

**Judgments Affirmed**

**Date of Decision: December 6, 2021**

APPEARANCES:

      *Henry Schaefer* for Appellant

      *Russell R. Herman* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Hyme J. Urbina, appeals the April 12, 2021 judgments of the Defiance County Court of Common Pleas revoking his community control and reimposing the balance of his prison sentence. For the reasons that follow, we affirm.

## I. Background

{¶2} In 2006, Urbina was sentenced to an aggregate term of 19 years and 11 months in prison for offenses ranging from robbery and burglary to possession of cocaine and failure to comply with the order or signal of a police officer. After serving 12 years and 6 months in prison, Urbina filed a motion for judicial release on November 15, 2018. On February 14, 2019, the trial court granted Urbina's motion for judicial release. The trial court suspended the balance of Urbina's prison sentence and placed him on community control for a period of 5 years. Upon his release from prison, Urbina resided in Ohio for a short time before moving to Texas, where his supervision was transferred.

{¶3} In late June 2020, Urbina was arrested for disorderly conduct in Defiance County.[1] Urbina was taken to the City of Defiance Police Department where he was met by a probation officer. The probation officer requested that Urbina submit to a drug screen. Urbina refused.

---

[1] This charge was subsequently dropped after the State filed its motion to revoke Urbina's community control.

{¶4} On July 2, 2020, the State filed a motion to revoke Urbina's community control and reimpose the balance of his prison sentence. As grounds for its motion, the State alleged that Urbina had violated the conditions of his community control by leaving his county of residence in Texas without prior permission and by refusing to submit to the drug screen as requested. On July 16, 2020, Urbina was released on his own recognizance, and a probable-cause hearing was scheduled for July 21, 2020. At a probation meeting on July 17, 2020, Urbina tested positive for the consumption of alcohol and admitted to using methamphetamines.

{¶5} Urbina failed to appear for the July 21, 2020 probable-cause hearing and a warrant for his arrest was issued. On July 23, 2020, the Defiance County Grand Jury indicted Urbina for failure to appear as required by his recognizance bond in violation of R.C. 2937.29 and 2937.99.

{¶6} Urbina was eventually arrested and a probable-cause hearing was held on September 17, 2020, at which the trial court concluded there was probable cause to find that Urbina had violated the conditions of his community control. An adjudicatory hearing was initially scheduled for October 8, 2020. However, over the next five months, the adjudicatory hearing was continued or rescheduled a total of six times.

{¶7} Meanwhile, on October 9, 2020, the State filed a supplemental motion to revoke Urbina's community control. The State's supplemental motion asserted

additional grounds for revoking Urbina's community control, specifically that Urbina had been indicted for failure to appear as required by his recognizance bond and that he had tested positive for alcohol on July 17, 2020.

{¶8} The adjudicatory hearing was finally held on March 31, 2021. At the beginning of the hearing, Urbina again moved for a continuance. This time, the trial court declined to continue the hearing. At the conclusion of the hearing, the trial court found by a preponderance of the evidence that Urbina had violated multiple conditions of his community control. Specifically, the trial court found that Urbina "absconded supervision by leaving the State of Texas without proper permission or authority; that [he] violated Ohio law by failing to appear for a scheduled hearing in this Court after being released on a personal recognizance bond; that he failed to submit to a drug screen as directed by a supervising officer; and that he admittedly used methamphetamine and alcohol." Accordingly, the trial court revoked Urbina's community control and reimposed the balance of his previously suspended prison sentence. The trial court filed its judgment entries on April 12, 2021.

{¶9} On April 27, 2021, Urbina timely filed notices of appeal. He raises four assignments of error for our review.

## II. Assignments of Error

**1.     The trial court violated appellant's right to due process when it did not require the State to timely disclose the evidence against him.**

-4-

**2. The trial court violated appellant's right to due process when it did not provide an opportunity to present documentary evidence.**

**3. The trial court violated appellant's right to due process when it did not act as a neutral and detached body.**

**4. Mr. Urbina received ineffective assistance of counsel when his attorney failed to object to the court's questioning of the State's witness.**

Because they concern interrelated issues, we consider Urbina's first and second assignments of error together. For similar reasons, we consider Urbina's third and fourth assignments of error together.

### III. Discussion

**A. First and Second Assignments of Error: By denying Urbina's request to continue the March 31, 2021 adjudicatory hearing, did the trial court violate Urbina's right to due process?**

{¶10} From the wording of Urbina's first and second assignments of error, one might conclude that he is challenging the State's belated disclosure of evidence and the trial court's refusal to allow him to present certain evidence at the March 31, 2021 adjudicatory hearing. Yet, these are not Urbina's arguments. Instead, in his first and second assignments of error, Urbina contends the trial court violated his right to due process when it denied his most recent request to continue the adjudicatory hearing. Urbina claims another continuance was required because he was not given "meaningful time" to review evidence the State provided to him on the morning of the adjudicatory hearing. He also maintains that the trial court, by

denying his request for another continuance, deprived him of an opportunity "to gather documents necessary for his defense."

**i. Continuances & Due Process**

{¶11} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).  Ordinarily, "[a]n appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *Id.*

{¶12} However, "[i]t is a basic due process right * * * that a defense counsel be afforded the reasonable opportunity to prepare his case." *State v. Sowders*, 4 Ohio St.3d 143, 144 (1983).  Therefore, where the granting of a continuance is necessary to allow defense counsel a reasonable opportunity to prepare his case, the denial of a request for a continuance may violate the defendant's right to due process.  But "not every denial of a continuance constitutes a denial of due process." *State v. Broom*, 40 Ohio St.3d 277, 288 (1988).  Indeed, "'[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841 (1964).  "Weighed against any potential prejudice to a defendant are concerns such

as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.*

{¶13} When evaluating a request for a continuance, a court should consider:

the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68. A court is not required to give particular weight to any one of these factors. *See Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, ¶ 23. Furthermore, "a trial court is not even explicitly required to outline the *Unger* factors when denying a continuance." *State v. Shurelds*, 3d Dist. Allen No. 1-20-35, 2021-Ohio-1560, ¶ 56.

### ii. The trial court did not violate Urbina's right to due process by denying his request to continue the March 31, 2021 adjudicatory hearing.

{¶14} After reviewing the record, we conclude that the trial court's decision to deny Urbina's request to continue the March 31, 2021 adjudicatory hearing was not so arbitrary as to violate Urbina's right to due process.

{¶15} Initially, it should be reiterated that this was not Urbina's first request for a continuance. As noted above, Urbina's adjudicatory hearing was continued or rescheduled a total of six times between October 2020 and March 2021. Some of these continuances were necessitated by Urbina's own conduct. For example, the

adjudicatory hearing scheduled for October 8, 2020 had to be continued when Urbina's original trial counsel moved to withdraw after "receiv[ing] written correspondence threatening a complaint to the Office of Disciplinary Counsel if [he] d[id] not comply with [Urbina's] orders." Similarly, after the adjudicatory hearing had already been continued three times, it was again moved from a rescheduled date of January 14, 2021, in order to accommodate Urbina's third trial counsel, who was appointed on December 31, 2020, after Urbina's second trial counsel moved to withdraw on grounds that Urbina had filed a grievance against him in the Office of Disciplinary Counsel. Urbina's third trial counsel then successfully moved to continue the adjudicatory hearing from February 4, 2021 to March 4, 2021, and finally from March 4, 2021 to March 31, 2021. Each of the final two continuances was granted to allow Urbina's third trial counsel further time to more fully prepare Urbina's defense.

{¶16} In addition, there is no indication in the record as to how long the proceedings would have been delayed had Urbina's request for a continuance been granted. *See Unger*, 67 Ohio St.2d at 69. Conspicuously absent from Urbina's request for a continuance is any estimation of how long it would take to review the documents provided by the State or obtain the other evidence supposedly necessary for his defense. *Id.*

{¶17} Finally, Urbina's reasons for requesting another continuance did not justify the added inconvenience to the litigants, the witnesses, and the trial court. Urbina first maintains a continuance was necessary to thoroughly review the documents the State provided to him on the day of the March 31, 2021 adjudicatory hearing. These documents were not admitted as exhibits at the hearing and some of them do not appear in the record. However, from the transcript of the hearing, we are able to discern that the State provided Urbina with a copy of his community control conditions, a copy of hold orders sent to the Corrections Center of Northwest Ohio ("CCNO"), and a statement from the Interstate Compact Offender Tracking System ("ICOTS") that Urbina "absconded [from Texas] and that he did not have permission to be in Ohio." After receiving the documents from the State, the trial court granted a brief recess to allow Urbina to review the documents with counsel.

{¶18} Considering the kind of documents provided to Urbina on the morning of the March 31, 2021 adjudicatory hearing, an additional continuance was not necessary. From the record before us, it appears the documents provided to Urbina were not voluminous or complex. In addition, some of them, specifically the copy of Urbina's community control conditions, were available from the clerk of courts throughout the pendency of the revocation proceedings. Furthermore, Urbina had signed and been given a copy of his community control conditions when he was released from prison in February 2019, and both of the State's motions to revoke

Urbina's community control quoted each of the allegedly-violated community control conditions verbatim. Lastly, some of the documents, specifically the orders sent to CCNO directing it to hold Urbina on the community control violations, were completely irrelevant to whether Urbina actually violated the conditions of his community control. As the documents provided to Urbina were uncomplicated and either immaterial to his defense or filled with information previously conveyed (or otherwise readily available) to Urbina, a continuance was not required; the brief recess was more than sufficient for Urbina to review the documents with counsel and incorporate them into his defense.

{¶19} Urbina also argues a continuance was necessary to allow him to obtain additional evidence crucial to his defense. Urbina claims he needed additional time to obtain three categories of evidence: (1) documents he signed during the July 17, 2020 meeting with a supervising probation officer; (2) evidence showing that he had not been served with notice of the probable-cause hearing set for July 21, 2020; and (3) evidence refuting the information received from ICOTS and showing "he was acting properly with regard to his supervision in Texas."

{¶20} Regarding the first category of evidence, at the March 31, 2021 adjudicatory hearing, the probation officer with whom Urbina met on July 17, 2020, represented that Urbina did not sign anything during their meeting. Moreover, Urbina failed to clearly describe the contents of the documents he purportedly

signed or explain how the documents would be relevant to rebutting the State's evidence that he violated the conditions of his community control. Here, given the doubts over the existence of these documents and their utility to Urbina in conducting his defense, we cannot see any legitimate basis for granting an additional continuance.

{¶21} Concerning the other two categories, we observe that Urbina had ample opportunity to secure this evidence in advance of the March 31, 2021 adjudicatory hearing. As of the date of the adjudicatory hearing, the case had been pending for nearly nine months. Setting aside the fact that Urbina changed attorneys twice between October and December 2020, he had more than enough time to work with his third trial counsel to obtain this evidence. Urbina's third trial counsel was appointed on December 31, 2020, after which he succeeded in delaying the adjudicatory hearing for three months in order to prepare Urbina's defense. Although Urbina's third trial counsel stated that Urbina had written "about six letters" to two probation officers seeking copies of his community control conditions and the hold orders sent to CCNO, there is no indication in the record of any attempt to obtain this evidence by a subpoena. Nor does it appear that Urbina undertook any effort to contact Texas probation officials or to communicate with Defiance County officials regarding whether notice of the July 21, 2020 probable-cause hearing had been properly served. *See Sowders*, 4 Ohio St.3d at 145. Nor did

Urbina demonstrate that this evidence could actually be obtained or how much additional time it might take to receive the evidence. *Id.*

{¶22} For the foregoing reasons, we hold that the trial court did not violate Urbina's right to due process by refusing to grant yet another continuance.

{¶23} Urbina's first and second assignments of error are overruled.

**B. Third and Fourth Assignments of Error: Did the trial court's questioning of the State's witness violate Urbina's right to due process and was his trial counsel ineffective for failing to object to the trial court's questioning?**

{¶24} In his third assignment of error, Urbina argues he was denied his right to due process because the trial court was prejudiced against him. He contends that the trial court's bias is manifest from the trial court's partial questioning of one of the State's witnesses. In his fourth assignment of error, Urbina argues his trial counsel was ineffective for failing to object to the trial court's questioning of this witness.

**i. The Trial Court's Allegedly Offending Questioning**

{¶25} Urbina's third and fourth assignments of error revolve around questions the trial court posed to Julie Berry, a Defiance County probation officer. The questioning pertained to Urbina's assertion that he had permission to leave Texas and come to Ohio. Near the close of the State's redirect examination, Berry was asked by the State whether she would have been notified if Urbina had been granted permission to be in Ohio. (Mar. 31, 2021 Tr. at 30). Berry responded that,

if proper protocol were being followed, she would have been notified. (Mar. 31, 2021 Tr. at 31). She further stated that she "would have received a copy of the travel permit as well." (Mar. 31, 2021 Tr. at 31). Berry testified that she did not receive any such travel permit. (Mar. 31, 2021 Tr. at 31).

{¶26} Thereafter, the trial court engaged in the following dialogue with Berry:

| [Trial Court]: | Seems to me, I have a recollection from years ago and I haven't heard reference to it recently cause it's not come up. If, I mean way back when we had a County Probation Department prior to APA supervision and that obviously is well prior to the, again having -- when a probationer got permission to go somewhere, there was actually a physical document that they called a travel permit. |
|---|---|
| [Berry]: | Correct. |
| [Trial Court]: | Do they still use those? |
| [Berry]: | Yes. Anytime they leave the State of Ohio they have to have a travel permit. |
| [Trial Court]: | And it seems to me that they were required to like, if they went somewhere they had to go get that signed by a -- |
| [Berry]: | Local Police. |
| [Trial Court]: | -- law enforcement or a probation officer or somebody there? |
| [Berry]: | Correct. |
| [Trial Court]: | Is that procedure still in effect? |

[Berry]:          Yes, we require that as well. So, if they go to the State of Indiana or whatever county they're in, they have to go to the local police department or the local sheriff's office and have that signed.

[Trial Court]:    There was no reference to it in your dealings with Mr. Urbina when the police called you out, was there any reference to him having a travel permit?

[Berry]:          No. And they are required to keep that on their person at all times if they're in a different state under probation.

[Trial Court]:    [D]oes that apply to Interstate Compact people as well?

[Berry]:          Yes, because they have to have a permit to leave the State of Ohio to go to the next state.

[Trial Court]:    What about from Texas, do you?

[Berry]:          Yes, there would have been a notice of departure sent from Texas to let me know that he was coming here and then I would have filled out a notice of arrival when he checked in with my office. Those two things were not done.

[Trial Court]:    Did you ask him if he had a travel permit?

[Berry]:          I did not.

(Mar. 31, 2021 Tr. at 31-34). The trial court then permitted the parties to ask additional questions based on this inquiry.

### ii. Judicial Bias & Due Process

**{¶27}** At the outset, we take note of the limitations on our review of Urbina's claims of judicial bias. "Authority to pass upon the disqualification of a judge of the Court of Common Pleas is vested in the Chief Justice under Section 5(C) of Article IV of the Ohio Constitution * * *." *Beer v. Griffith*, 54 Ohio St.2d 440, 441 (1978). For this reason, a court of appeals lacks the "authority to pass upon disqualification or to void the judgment of the trial court upon that basis." *Id.* at 441-442. "The determination of a claim that a common pleas judge is biased or prejudiced is within the *exclusive jurisdiction* of the Chief Justice of the Supreme Court of Ohio, or his designee." (Emphasis sic.) *State v. Holdcroft*, 3d Dist. Wyandot No. 16-10-04, 2010-Ohio-6262, ¶ 25.

**{¶28}** Nevertheless, where judicial bias is alleged, "a due process issue may still exist because a 'criminal trial before a biased judge is fundamentally unfair * * *.'" *State v. Bender*, 3d Dist. Union No. 14-21-01, 2021-Ohio-1931, ¶ 19, quoting *State v. Wieser*, 3d Dist. Allen No. 1-18-15, 2018-Ohio-3619, ¶ 23; *see State v. Dendinger*, 3d Dist. Seneca No. 13-18-38, 2019-Ohio-2158, ¶ 23-24; *State v. Corchado*, 7th Dist. Mahoning No. 16 MA 0155, 2017-Ohio-4390, ¶ 13-14.

> Judicial bias has been described by the Supreme Court of Ohio as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."

*Wieser* at ¶ 23, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus. "However, '[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions.'" *Id.*, quoting *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, ¶ 5.

### iii. The trial court's questioning did not evince bias on the part of the trial court, and Urbina's trial counsel was not ineffective for failing to object.

{¶29} Trial courts enjoy broad discretion with respect to the questioning of witnesses. "In regard to the examination of witnesses, the trial judge is something more than a mere umpire or sergeant at arms to preserve order in the courtroom." *State v. Davis*, 79 Ohio App.3d 450, 456 (4th Dist.1992). The trial court "has active duties to perform in maintaining justice and in seeing that the truth is developed and may, for such purpose, put proper questions to the witnesses, and even leading questions." *Id.*

{¶30} Evid.R. 614(B) recognizes the court's authority in this domain, allowing that "[t]he court may interrogate witnesses, in an impartial manner, whether called by itself or by a party." "'In absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth.'" *State v. Baston*, 85 Ohio St.3d 418, 426 (1999), quoting *Jenkins v. Clark*, 7 Ohio

App.3d 93, 98 (2d Dist.1982). "A trial court's interrogation of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant." *State v. Blankenship*, 102 Ohio App.3d 534, 548 (12th Dist.1995).

{¶31} Pursuant to Evid.R. 101(C)(3), most of the Rules of Evidence, including Evid.R. 614(B), are inapplicable to community-control revocation hearings. Nonetheless, Evid.R. 614(B) serves as a guide for trial-court questioning in the community-control revocation setting. It would make little sense for a trial court to have less authority to question witnesses at a revocation hearing than at a criminal trial. To the contrary, "a trial court enjoys even greater freedom in questioning witnesses during [non-jury proceedings] because the court cannot prejudicially influence a jury with its questions or demeanor." *Yurkowski v. Univ. of Cincinnati*, 10th Dist. Franklin No. 11AP-974, 2013-Ohio-242, ¶ 61.

{¶32} Here, nothing in the trial court's questioning of Berry suggests favoritism toward the State or hostility toward Urbina. During redirect examination, Berry testified that if Urbina had been granted permission to leave Texas and come to Ohio, she would have expected to receive a copy of his travel permit. However, Berry's initial testimony included little information about what travel permits are, the procedures for issuance and use of travel permits, and whether Texas issues travel permits in the same manner as Ohio. These issues were relevant to

understanding whether Urbina had violated the terms of his community control by coming to Ohio, and the trial court's questioning produced needed clarification. Nothing about the trial court's questioning indicates that it had prejudged the matter, that it was trying to elicit testimony to bolster the State's case, or that it had some vendetta against Urbina. Therefore, as the trial court's questioning does not betray bias, prejudice, or partiality, we conclude that the trial court did not violate Urbina's right to due process. *See State v. Schwartz*, 12th Dist. Clermont Nos. CA2019-04-029, CA2019-04-030 and CA2019-04-031, 2019-Ohio-4912, ¶ 31; *State v. Greenway*, 1st Dist. Hamilton No. C-160511, 2017-Ohio-7729, ¶ 5-13.

{¶33} Nor was Urbina's trial counsel ineffective for failing to object to the trial court's questioning. To sustain a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient or unreasonable under the circumstances. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Counsel does not perform deficiently or unreasonably by failing to object to entirely permissible questioning. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 76-89; *State v. Mieczkowsk*, 7th Dist. Jefferson No. 17 JE 0016, 2018-Ohio-2775, ¶ 82-84, 88. Thus, because the trial court's questioning of Berry was proper, Urbina cannot establish that his trial counsel was ineffective for failing to object. *See State v. Wortham*, 6th Dist. Lucas No. L-01-1449, 2002-Ohio-3976, ¶ 58-61 (trial counsel

was not ineffective for failing to object to trial court's questioning of a witness because trial court's questioning was appropriate, displaying no "obvious bias, prejudice," or improper partiality).

{¶34} Urbina's third and fourth assignments of error are overruled.

### IV. Conclusion

{¶35} For the foregoing reasons, Urbina's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the Defiance County Court of Common Pleas.

***Judgments Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**