[Cite as *State v. Shockey*, 2024-Ohio-296.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,                                    CASE NO. 9-23-22

    PLAINTIFF-APPELLEE,

    v.

DOUGLAS SHOCKEY,                          O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Marion County Common Pleas Court
Trial Court No. 2021 CR 241**

**Judgment Affirmed in part, Reversed in part, and Cause Remanded**

**Date of Decision:  January 29, 2024**

APPEARANCES:

    *April F. Campbell* **for Appellant**

    *David Stamolis* **for Appellee**

Case No. 9-23-22

**WALDICK, J.**

{¶1} Defendant-appellant, Douglas Shockey ("Shockey"), brings this appeal from the March 13, 2023, judgment of the Marion County Common Pleas Court sentencing him to prison after he was convicted by a jury of two counts of Assault and one count of Obstructing Official Business. On appeal, Shockey argues that there was insufficient evidence presented to support his convictions, that his convictions were against the manifest weight of the evidence, that the verdict forms failed to comply with R.C. 2945.75, that the trial court erred by not instructing the jury on "accident," and that the trial court erred by failing to merge his convictions for purposes of sentencing. For the reasons that follow, the trial court's judgment is affirmed in part, and reversed in part.

*Background*

{¶2} Shockey was convicted by a jury of two counts of Assault in violation of R.C. 2903.13(A), both fourth degree felonies, and Obstructing Official Business in violation of R.C. 2921.31(A), a fifth degree felony.[1] On March 13, 2023, Shockey was sentenced to serve 18 months in prison on each Assault conviction and 12 months in prison on the Obstructing Official Business conviction. The prison terms

---

[1] In addition to the charges he was convicted of, Shockey was also originally indicted for two counts of Felonious Assault and a misdemeanor Domestic Violence. However, one Felonious Assault charge was dismissed prior to trial and Shockey was acquitted of the other Felonious Assault charge and the Domestic Violence charge.

-2-

were ordered to be served consecutively for an aggregate 48-month prison term.

Shockey now brings the instant appeal, asserting the following assignments of error

for our review.

### First Assignment of Error

**Shockey's convictions and sentences should be reversed because the verdict forms do not comply with R.C. 2945.75:  There was no special finding or degree of offense listed in the verdict forms to convict Shockey and sentence him, on anything more than three misdemeanors.**

### Second Assignment of Error

**The evidence th[at] Shockey committed obstructing official business was legally insufficient.**

### Third Assignment of Error

**The State's evidence that Shockey committed assault against both officers was legally insufficient as a matter of law.**

### Fourth Assignment of Error

**The evidence also weighed manifestly against convicting Shockey of obstructing official business and assault of two officers.**

### Fifth Assignment of Error

**The Court committed prejudicial error by not instructing the jury on Shockey's accident at Shockey's request.**

### Sixth Assignment of Error

**The trial court should have merged Shockey's obstruction offense with his assault on a police officer offense.**

{¶3} For ease of discussion, we elect to address some of the assignments of error together, and out of the order in which they were raised.

*Second and Third Assignments of Error*

{¶4} In his second and third assignments of error, Shockey argues that there was insufficient evidence presented to convict him of two counts of Assault against police officers and of Obstructing Official Business.

Standard of Review

{¶5} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

## Controlling Statutes

**{¶6}** Shockey was convicted of two counts of Assault as fourth degree felonies, both in violation of R.C. 2903.13(A)/(C)(5)(a), which reads:

(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

* * *

(5) If the assault is committed in any of the following circumstances, assault is a felony of the fourth degree:

(a) The victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of the officer's, investigator's, firefighter's, or person's official duties.

**{¶7}** Shockey was also convicted of Obstructing Official Business as a fifth degree felony in violation of R.C. 2921.31(A)/(B), which reads as follows:

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

(B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

Evidence Presented by the State

**{¶8}** On the night of June 11, 2021, Shockey was living with his parents in rural Marion County. According to Shockey's father, Kelmer, Shockey was intoxicated and stumbled through a door, falling into the fireplace. Kelmer tried to assist Shockey, but Shockey "swung" at Kelmer. Shockey also attempted to kick Kelmer in the legs. Kelmer instructed his wife to call the police and two officers from the Marion County Sheriff's Office responded to the scene.

**{¶9}** When the officers arrived, Kelmer was outside near the garage and he told the officers that Shockey was "blind drunk, pissing on our vehicles." Kelmer indicated that Shockey had gone into the back yard. The two officers went to the back yard, using their flashlights for light. They located Shockey by a bench and Shockey stated he had a couple of drinks and was just trying to go to sleep.

**{¶10}** Officers asked Shockey if there had been an assault and Shockey claimed that he was actually the person who was assaulted by Kelmer. Shockey called his father a "piece of shit" and said that Kelmer punched him.

**{¶11}** Given the conflicting stories, one of the officers decided to detain Shockey while the matter was investigated. The following exchange occurred at trial regarding the decision to detain Shockey:

Q. Why did you decide at that point to detain him?

A. Reasonable suspicion. Several factors. We were, dispatched –
Dispatch originally told us that Mr. Shockey was beating on his father.

So that's one suspicion. Dad admitted that Douglas was very highly intoxicated. Douglas admitted that he had been drinking. And roughly from where we were at at [sic] that bench to the front of the garage was roughly 30 yards. I didn't feel comfortable leaving Deputy Jarrod Kidwell by himself with him – with Mr. Shockey while I go up front, and he's completely out of my view. And as you can see, it's clearly black out there [from the footage displayed on the body camera]. You can't see.

Q. Was he under arrest at that point?

A. No, he was just being detained until we can further investigate it.

(Tr. at 166-167).

{¶12} When one of the officers informed Shockey that he was going to be handcuffed and detained, Shockey said "nope" and said that the officers were not going to put cuffs on him. Shockey attempted to walk away, but the officers struggled with Shockey, all three of them going to the ground. During the fall, one of the officers fractured his wrist.

{¶13} Shockey was handcuffed but he continued to struggle while he was on the ground, kicking one of the officers multiple times. Shockey was asked if he would stop kicking if the officers let him up, and he said he would. The officers stood Shockey up and started walking him to the police cruiser, but Shockey went to the ground again. Eventually Shockey was taken to the police cruiser, where he started yelling profanities at his parents, who were still in the garage. As Shockey was being placed in the back of the police cruiser, he kicked the other deputy in the head. The deputy went to the hospital the next day and was found to have a mild

concussion. Both officers were wearing body cameras during the incident. The body camera footage was played for the jury.

Analysis

{¶14} When examining the evidence in the light most favorable to the State as we are directed in a sufficiency analysis, there was clear testimony that two separate officers from the Marion County Sheriff's Office were kicked by Shockey while the officers were on duty. Nevertheless, Shockey contends that the evidence did not establish that he acted "knowingly."

{¶15} Contrary to his argument, Shockey kicked officers multiple times and he kicked one officer after he said he would no longer be kicking if he was allowed to get up. Further, Shockey also affirmatively stated that he would not be handcuffed, indicating his desire to resist detainment. Given that he kicked one officer twice and the other officer directly in the head after he had said he would no longer kick, the evidence, when viewed in the light most favorable to the State, is sufficient to find that Shockey acted knowingly. Under similar circumstances, this evidence has been found sufficient to convict an individual of assault on a police officer as a fourth degree felony. *State v. Fort*, 2016-Ohio-1242, 61 N.E.3d 864, ¶ 27 (10th Dist.).

{¶16} Shockey next contends that the evidence was insufficient to support his conviction for Obstructing Official Business. He argues that when he resisted

the officer's attempt to handcuff him and he started to walk away, this did not impede or hamper the performance of the officer's duties. However, contrary to his argument, police were not able to speak separately with the individuals at the scene once Shockey determined he would not be detained and those acts did hinder the officers' performance. Further, Shockey's actions did create a risk of physical harm given that one officer fractured his wrist while trying to detain Shockey. When viewing the evidence in the light most favorable to the State, we find that the evidence was sufficient to convict Shockey of Obstructing Official Business.

{¶17} As there was sufficient evidence presented to support the convictions, Shockey's second and third assignments of error are overruled.

*Fourth Assignment of Error*

{¶18} In his fourth assignment of error, Shockey argues that even if there was sufficient evidence presented to convict him, his convictions were against the manifest weight of the evidence.

Standard of Review

{¶19} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving

conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

{¶20} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Evidence Presented by the Defense

{¶21} Shockey testified at trial that he was a former police officer and he had a drinking problem. He testified that on the night in question he had consumed a "great deal" of alcohol. He testified that when the officers indicated they were going to detain him, he was unhappy because he felt like they were not listening to him about being the victim.

{¶22} Shockey testified that he was not trying to resist officers he just did not want to be handcuffed. He felt there was no need to handcuff him since he did not even have any shoes on. He testified that he never tried to kick the officers and he did not do so on purpose.

{¶23} He also claimed that one of the officers took his own body camera off so that a kick was not visible on video. Shockey accused the officer of faking the incident to get time off of work.

Analysis

{¶24} Shockey contends that the greater weight of the evidence supports the conclusion that he did not knowingly cause harm to the officers and that he did not obstruct the officers in the course of their lawful duties. However, the jury was able to see, hear, and evaluate the testimony of both officers and the testimony of Shockey. The jury was able to see the footage from the body cameras, and after examining the evidence, the jury did not find Shockey's story credible. The trier-of-fact is free to believe or disbelieve any or all of a witness's testimony, including a defendant's attempt to minimize his conduct. *State v. Jones*, 3d Dist. Allen No. 1-21-61, 2022-Ohio-2089, ¶ 28.

{¶25} Simply put, this is not the exceptional case where the evidence weighs heavily against conviction. *See Haller*, *supra*. The evidence supports the jury's verdicts and we do not find that the convictions are against the manifest weight of the evidence. Therefore, Shockey's fourth assignment of error is overruled.

*First Assignment of Error*

{¶26} In his first assignment of error, Shockey argues that all three of the verdict forms did not contain the degrees of the offenses or the additional enhancing

elements of the offenses pursuant to R.C. 2945.75, thus he could only be convicted of the lowest forms of the offenses pursuant to *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735.

Revised Code 2945.75(A)(2) and Verdict Form Jurisprudence

**{¶27}** Revised Code 2945.75(A)(2) provides the following with regard to verdicts:

> (A) When the presence of one or more additional elements makes an offense one of more serious degree:
>
> * * *
>
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

**{¶28}** The Supreme Court of Ohio first considered the effect of not complying with R.C. 2945.75(A)(2) in *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735. Pelfrey was convicted of tampering with government records in violation of R.C. 2913.42(A)(1), (B)(4), a felony of the third degree. The verdict form for that count stated:

> We, the jury, upon the issues joined in this case, do find the Defendant, David L. Pelfrey, Guilty of the offense of Tampering With Records as charged in the indictment.

*State v. Pelfrey*, 2d Dist. Montgomery No. 19955, 2005-Ohio-5006, ¶ 10. Unlike the verdict form, the indictment contained the offense level and the enhancing

element that the records were governmental. Nevertheless, Pelfrey was convicted of tampering with records as a third degree felony.

{¶29} Pelfrey did not challenge his verdict form on direct appeal; however, the Second District Court of Appeals granted his application to reopen his appeal under App.R. 26(B) to consider the verdict form deficiency. *Id.* at ¶ 4. Ultimately, the Second District determined that the verdict form did not comply with R.C. 2945.75(A)(2) thus the conviction had to be reduced to the lowest degree of the offense, a first degree misdemeanor. *Id.* at ¶ 26.

{¶30} A certified conflict was issued with regard to *Pelfrey* and other Ohio Appellate decisions and the following question was presented to the Supreme Court of Ohio for consideration:

> "Whether the trial court is required as a matter of law to include in the jury verdict form either the degree of the offense of which the defendant is convicted or to state that the aggravating element has been found by the jury when the verdict incorporates the language of the indictment, the evidence overwhelmingly shows the presence of the aggravating element, the jury verdict form incorporates the indictment and the defendant never raised the inadequacy of the jury verdict form at trial."

*Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, ¶ 1. In answering the certified question, the Supreme Court of Ohio unequivocally stated, "[t]he answer to this question is yes." *Id.*

{¶31} Thus, in *Pelfrey*, the Supreme Court of Ohio held that even in a plain error review, a verdict form must include the aggravating element or the degree of

the offense. *Pelfrey* held that a verdict form *cannot* be cured by overwhelming evidence of the enhancing element or incorporation of language from the indictment. The Supreme Court of Ohio reasoned that R.C. 2945.75 was clear and complete and "[t]he statutory requirement certainly imposes no unreasonable burden on lawyers or trial judges." *Id*. at ¶ 12.

{¶32} Despite the seemingly unequivocal stance of the Supreme Court of Ohio in *Pelfrey*, approximately five years later, in *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, the Supreme Court of Ohio held that a verdict form referencing the charge as contained in the indictment could be sufficient to satisfy R.C. 2945.75 in a drug possession case where the only drug ever mentioned at trial was cocaine and the jury was instructed that in order to convict the defendant "of possession of drugs as charged in Count Two" it had to find "the drug involved to be cocaine or a compound, mixture, preparation, or substance containing cocaine." (Emphasis deleted.) *Eafford* at ¶ 17. Thus in *Eafford*, the Supreme Court of Ohio seemed to contradict *Pelfrey* and hold that circumstances outside the verdict form could be considered in plain error challenges, such as the evidence and the jury instructions. However, the *Eafford* majority did not specifically overrule *Pelfrey*. The dissenting justices in *Eafford* noted that *Pelfrey* would have compelled a different result because circumstances outside of the verdict form should not be considered pursuant to R.C. 2945.75.

**{¶33}** Just over a year after *Eafford* was decided, the Supreme Court of Ohio released *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, seeming to backtrack its stance from *Eafford*. In *McDonald*, the Supreme Court of Ohio held where a criminal statute "in which the addition of certain elements enhances the crime of failure to comply with the order or signal of a police officer, we look only to the verdict form signed by the jury to determine whether, pursuant to R.C. 2945.75," a defendant is properly convicted of an elevated offense. *Id*. at ¶ 18. Thus *McDonald* again confined review of verdict forms *to the form itself*. Notably, neither the majority nor the dissent mentioned *Eafford at all* in reaching its conclusion.

**{¶34}** Ohio Appellate Courts have recognized that *Pelfrey*, *Eafford*, and *Mcdonald*, "have led to some confusion regarding what is required to comply with R.C. 2945.75(A)(2) and to what extent a failure to strictly comply with R.C. 2945.75(A)(2) is subject to a plain-error analysis[.]" *State v. Sanders*, 8th Dist. Cuyahoga No. 107253, 2019-Ohio-1524, ¶ 47; *State v. Barnette*, 7th Dist. Mahoning No. 13 MA 183, 2014-Ohio-5405, 26 N.E.3d 259, ¶ 30; *State v. Sanders*, 2016-Ohio-7204, 76 N.E.3d 468, ¶ 72 (5th Dist.) ("The puzzling effect of this line of cases arises in part because the *Eafford* majority does not mention *Pelfrey* and its decision is inconsistent with *Pelfrey*. In both cases * * * the defendants did not object to the

verdict forms."); *State v. Robinson*, 2019-Ohio-2155, 137 N.E.3d 501, ¶ 23 (4th Dist.).

**{¶35}** The Eighth District attempted to reconcile the holdings of *Eafford* and *McDonald* in *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 15-18, by essentially applying both the "strict compliance" test of *Pelfrey/McDonald*, *and* the "plain error" test of *Eafford*. However, while the result in *Kilbane* was the same under both tests, other Ohio Appellate Courts have noted that applying both tests in the same case leads directly to different results. *State v. Barnette*, 2014-Ohio-5405, 26 N.E.3d 259, ¶ 34 (7th Dist.) (stating that applying both tests in the appeal led to different results, and ultimately applying *McDonald*).

**{¶36}** Multiple Ohio Appellate Districts, including this one in a divided opinion, have concluded that because of the confusion with applying the Supreme Court of Ohio's seemingly conflicting legal authority on verdict forms, *McDonald* would control as the most recent pronouncement from the Supreme Court of Ohio. *State v. Duncan*, 3d Dist. Logan No. 8-12-15, 2014-Ohio-2720, ¶ 10; *Barnette* at ¶ 37 (stating "we are of the opinion that *Eafford,* at best, is confined to the facts of that case and those facts are distinguishable from the matter at hand. At worst, *Eafford* is an anomaly."). While we implore the Supreme Court of Ohio to provide greater clarity on this issue in a plain error context, we are compelled to follow the most recent holding of the Supreme Court of Ohio in *McDonald*, which

requires strict compliance with R.C. 2945.75 and does not allow for considerations outside of the four corners of the jury verdict form.

Analysis

**{¶37}** The verdict forms in this case read as follows:

We, the jury in this case, being duly impaneled and sworn, find the Defendant, Douglas Grey Shockey, * guilty on the offense Assault [R.C.2903.13] as charged in Count 2 of the Indictment.

(Brackets in original.) (Doc. No. 127).

We, the jury in this case, being duly impaneled and sworn, find the Defendant, Douglas Grey Shockey, * guilty on the offense Assault [R.C.2903.13] as charged in Count 3 of the Indictment.

(Brackets in original.) (Doc. No. 128).

We, the jury in this case, being duly impaneled and sworn, find the Defendant, Douglas Grey Shockey, * guilty on the offense Obstructing Official Business [R.C.2921.31(A)] as charged in Count 4 of the Indictment.

(Brackets in original.) (Doc. No. 129).

**{¶38}** A plain reading of the verdict forms establishes that Counts 2 and 3 related to Assault do not mention the aggravating element that the victim was a peace officer in the performance of his official duties. The verdict forms also do not cite the statutory subsection related to that enhancing element, or cite the degree of the offense.

{¶39} Similarly, Count 3 related to Obstructing Official Business does not state the aggravating element of creating a risk of physical harm to any person. In addition, the verdict form did not cite the degree of the offense.

{¶40} Applying *McDonald* to the case before us and looking only at the four corners of the jury verdict forms, Shockey could only be convicted of the lowest degree of each offense because the verdict forms did not comply with R.C. 2945.75(A)(2). *State v. Williams*, 8th Dist. Cuyahoga No. 112194, 2023-Ohio-3246, ¶ 37 (reducing fourth-degree felony assault to first-degree misdemeanor assault where verdict form did not state the degree of the offense or enhancing element); *State v. DiCarlo*, 4th Dist. Socioto No. 09CA3301, 2010-Ohio-3759, ¶ 37 (same, albeit post-*Pelfrey*, pre-*Eafford/McDonald*).

{¶41} We are not unsympathetic to the State's argument that if we applied *Eafford* and looked outside of the jury verdict form, plain error would not be apparent here given that the jury verdict forms referenced the indictment and given that the evidence was undisputed that the victims were police officers acting in their official capacity. However, we are constrained to follow the law as it is, and as multiple courts have noted, the strict burdens of *Pelfrey/McDonald* impose relatively little burden on trial judges and lawyers.

{¶42} In sum, as the jury verdict forms do not comply with R.C. 2945.75(A)(2) and the strict application of that statute mandated by

*Pelfrey/McDonald*, Shockey's felony convictions must be reversed for the trial court to enter convictions on the lowest form of the offenses and sentence Shockey accordingly. Therefore, Shockey's first assignment of error is sustained.

*Fifth Assignment of Error*

{¶43} In his fifth assignment of error, Shockey argues that the trial court erred by declining to instruct the jury on "accident."

Standard of Review

{¶44} We review a trial court's refusal to give a requested jury instruction under an abuse of discretion standard. *State v. Thompson*, 3d Dist. Henry No. 7-16-10, 2017-Ohio-792, ¶ 11. An abuse of discretion occurs when a trial court's decision was unreasonable, arbitrary, or capricious. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

Analysis

{¶45} Shockey argued to the trial court that the following jury instruction on accident should be provided:

> CONCLUSION ON ACCIDENT. If after considering all the evidence, including that on the subject of accident, you are not convinced beyond a reasonable doubt that the defendant had a purpose to cause injury, you must return a verdict of not guilty.

(Doc. No. 121).

{¶46} Shockey contended that he presented evidence that would support the accident instruction through his own testimony. Shockey testified that he did not

kick the officers on purpose and he did not intend to cause, or attempt to cause, physical harm. The trial court denied Shockey's request for an "accident" instruction and Shockey now argues that the trial court committed prejudicial error.

**{¶47}** To support his argument that the trial court erred, Shockey cites the following passage from *State v. O'Brien*, 2013-Ohio-13, 986 N.E.2d 531, ¶ 72 (11th Dist.):

> Given these circumstances, the better practice is to always require the "accident" instruction whenever it is warranted under the facts, and to hold that it is prejudicial error to not give the instruction when requested by the defendant because the "accident" instruction explicitly states what is only implicit in the pertinent mens rea definitions.

Shockey contends that the instruction was warranted under the facts here, so according to *O'Brien*, the better practice was to always require the instruction. However, Shockey ignores the fact that *O'Brien* proceeds to determine there was no plain error "because a proper definition of the term "knowingly" will suffice to inform an average juror that if an accident occurred, then the defendant did not act knowingly." *Id*. at ¶ 73.

**{¶48}** Moreover, if the jury found Shockey's story true, then the jury would have concluded that he did not knowingly cause or attempt to cause physical harm. *See id*. Shockey directs us to no cases where failure to provide an accident instruction in circumstances such as these amounted to an abuse of discretion. For all of these reasons, Shockey's fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶49} In his sixth assignment of error, Shockey argues that the trial court should have merged Shockey's offenses for purposes of sentencing. However, because Shockey must be resentenced in this matter, this assignment of error is moot given that he may argue it (again) at the trial court level.

*Conclusion*

{¶50} Having found error prejudicial to Shockey in the first assignment of error, we sustain Shockey's first assignment of error and reverse the judgment of the Marion County Common Pleas Court, and remand the cause for the trial court to enter a judgment convicting Shockey of two counts of Assault as first-degree misdemeanors and Obstructing Official Business as a second-degree misdemeanor and to impose a sentence accordingly. The sixth assignment of error is moot, and the remaining assignments of error are overruled.

*Judgment Affirmed in Part,*
*Reversed in Part,*
*Cause Remanded*

**MILLER and ZIMMERMAN, J.J., concur.**

**/hls**