[Cite as *State v. Estill*, 2026-Ohio-2238.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

NATHANIEL A. ESTILL,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-42

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2025 0091

Judgment Affirmed

Date of Decision: June 15, 2026

APPEARANCES:

    *Chima R. Ekeh* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Nathaniel Estill ("Estill"), appeals the judgment of conviction and sentence entered against him in the Allen County Court of Common Pleas, following a jury trial in which he was found guilty of possessing methamphetamine. For the reasons set forth below, we affirm.

*Procedural History*

{¶2} This case originated on March 13, 2025, when an Allen County grand jury returned a single-count indictment against Estill. The indictment charged Estill with Aggravated Possession of Drugs, specifically methamphetamine in an amount equal to or exceeding the bulk amount but less than five times the bulk amount, a third-degree felony in violation of R.C. 2925.11(A) and (C)(1)(b).

{¶3} On March 27, 2025, an arraignment was held and Estill pled not guilty to the indictment. Nearly four months of pretrial proceedings then ensued.

{¶4} On Monday, July 21, 2025, a jury trial commenced in the case. After a jury was seated that morning, a lunch recess was taken. Following the lunch recess, counsel for the prosecution and counsel for the defense presented opening statements and the prosecution then conducted a direct-examination of its first witness. Prior to that witness being cross-examined, Estill asked for a recess, and the jury was excused from the courtroom. At that time, Estill informed the trial court that he wished to represent himself. After providing a lengthy and detailed

admonition regarding the perils of self-representation, the trial court accepted a waiver of counsel from Estill, who then represented himself for the duration of the trial, with his court-appointed attorney serving as shadow counsel.

{¶5} Over the course of the two-day trial, the prosecution presented the testimony of three witnesses and introduced nine evidentiary exhibits. After the State of Ohio rested its case, Estill presented no evidence.

{¶6} Following closing arguments by the prosecution and Estill, and then instructions of law by the trial court, the jury received the case for deliberation on July 22, 2025. Later in the afternoon on that same date, the jury returned a verdict finding Estill guilty as charged in the indictment. The trial court accepted the verdict and discharged the jury.

{¶7} The matter then proceeded directly to a sentencing hearing, and the trial court sentenced Estill to a prison term of 30 months.

{¶8} On July 23, 2025, the trial court journalized its sentencing orders.

{¶9} On July 30, 2025, Estill filed this appeal.

*Summary of Evidence Presented at Trial*

{¶10} During the State of Ohio's case-in-chief at trial, evidence was presented that on May 8, 2024, Patrolman Trent Kunkleman of the Lima Police Department was working the day shift when he responded to a call for service at an injury-accident scene in the area of Main Street and First Street of Lima, Allen County, Ohio. Kunkleman testified that, upon arriving at the scene, he observed

Estill sitting in the street amongst the debris of a wrecked electric scooter. As the fire department was already there and was assisting Estill, Kunkleman first focused his attention on speaking with the occupants of the car that had been involved in the collision with the scooter.

{¶11} After speaking with those persons, Kunkleman began helping to clean up the accident debris on Main Street, as the accident scene was blocking traffic. Kunkleman testified that, as he started doing so, he was approached by a fireman who informed him that fire department personnel believed there were drugs amongst the items that had fallen out of the scooter in the wreck. Kunkleman then walked to the location of the scooter, where he noticed a clear bag of methamphetamine and a glass pipe on the ground. Kunkleman testified that he then moved another item of debris out of the way and, underneath, found a second baggie of methamphetamine.

{¶12} At trial, Kunkleman identified photographs he had taken of the wrecked scooter and the methamphetamine and pipe he found lying in the street. Kunkleman testified that, as also depicted in the photos, it appeared that the drugs, pipe, and other items in the street had been in the electric scooter's storage receptacle, which had broken open in the crash. Kunkleman testified that he collected the two bags of methamphetamine and the glass pipe, secured the evidence in the locked trunk of his cruiser, then subsequently labeled the items and placed them into the Lima Police Department evidence storage system when he returned to the police station later that day.

**{¶13}** Kunkleman testified that, after collecting the evidence, he waited at the accident scene for a wrecker to arrive, because the wrecked electric scooter had to be hauled away. While waiting at the scene, Kunkleman also picked up several personal items, including a backpack, a cell phone, and some money, that he found amongst the debris in the street from the wrecked scooter.

**{¶14}** Once Kunkleman was able to leave the accident scene, he went to the hospital to speak with Estill, whom Kunkleman had not yet talked to because Estill had been busy with the EMTs while still at the scene of the accident. Kunkleman testified that, once at the hospital, he talked to Estill in the emergency room. Kunkleman testified that Estill confirmed that the scooter he had been riding was his, and that he had owned it for roughly one year. Kunkleman informed Estill that he would be receiving a traffic citation for the accident, but that the criminal case involving the methamphetamine found to have been in his scooter's storage cubby would be presented to a grand jury at a later date. While at the emergency room, Kunkleman also returned the personal property he had collected at the accident scene to Estill, including the cell phone, the backpack, and the money.

**{¶15}** Audio-video footage recorded by Kunkleman's body camera during his time at the accident scene on May 8, 2024 and then at the hospital later that same day was identified by Kunkleman at trial and played for the jury. The footage from the body camera reflected that, when Kunkleman was at the hospital speaking with Estill, Kunkleman said, "you had a decent amount of meth in your scooter", to which

Estill responded, "yeah." When Kunkleman informed Estill that he would be indicted for possessing the methamphetamine, Estill responded, "okay."

{¶16} During cross-examination at trial, Patrolman Kunkleman acknowledged that the photographs showing the methamphetamine amongst the wrecked scooter and its debris were taken after he had picked up the second baggie of drugs and then put it back in the same general location where it had been found. Kunkleman also testified that, while he questioned other persons at the accident scene about the accident, he did not question anyone there about the drugs found by the wrecked scooter. When asked why he would assume the drugs belonged to Estill, Kunkleman stated that was because the drugs were mixed in with Estill's other belongings. Kunkleman acknowledged that the fire department personnel also had access to the area where the drugs were found. When asked if it was possible that someone else at the scene had thrown down the drugs near Estill, Kunkleman testified that it was possible but highly unlikely. Kunkleman clarified that, based on his twenty-five years of law enforcement experience, it is very unlikely that a drug user would discard narcotics for no good reason. Finally, Kunkleman acknowledged that he did not see Estill using drugs and did not observe Estill to throw any drugs on the ground.

{¶17} At trial, the second witness for the prosecution was Gregory Adkins, an identification officer with the Lima Police Department. In his testimony, Adkins detailed the manner in which evidence is labeled, handled, and securely stored by

the police department, particularly as relevant to the chain of custody of the drugs that had been collected as evidence in the instant case. Adkins also testified that he had transported the suspected methamphetamine to the Bureau of Criminal Investigation ("BCI") lab in Bowling Green, Ohio for testing and that, after the drugs were tested, they were returned to the police department and placed back into the evidence system there.

{¶18} The third and final witness for the prosecution at trial was Tyler Tomlins, a forensic scientist in the drug chemistry section at BCI and an expert in controlled substance analysis. In his testimony, Tomlins detailed the evidence storage system and related procedures at BCI, as relevant to chain of custody. Tomlins also testified that he weighed and performed chemical testing and instrumental analysis on the contents of the two plastic baggies submitted in the case by the Lima Police Department. The substance in the first baggie weighed 7.85 grams, plus or minus .05 grams, and was found to contain methamphetamine. The substance in the second baggie weighed 4.96 grams, plus or minus .05 grams, and was also found to contain methamphetamine.

*Assignments of Error Raised on Appeal*

**First Assignment of Error**

**The trial court erred in denying appellant's motion to continue the jury trial.**

**Second Assignment of Error**

**Appellant received ineffective assistance of counsel.**

**Third Assignment of Error**

**The trial court erred in denying defendant's request for new counsel.**

**Fourth Assignment of Error**

**Appellant's conviction was not supported by sufficient evidence.**

**Fifth Assignment of Error**

**Appellant's conviction was against the manifest weight of the evidence.**

*Analysis of Assignments of Error*

*First Assignment of Error*

{¶19} In the first assignment of error, Estill argues that the trial court erred when it denied a defense motion seeking a continuance of the trial date.

{¶20} With regard to this issue, the record reflects that, after Estill was indicted on March 13, 2025, an arraignment was held on March 27, 2025. One day prior to the arraignment, the trial court filed a scheduling order setting the first pretrial in the case for April 4, 2025. On the day of the arraignment, the trial court appointed the Allen County Public Defender's Office as counsel to represent Estill, upon finding that he was indigent and unable to employ counsel.

{¶21} On March 28, 2025, attorney Megan McLean of the Allen County Public Defender's Office filed a notice of representation.

{¶22} On April 4, 2025, following the initial pretrial in the case, the trial court filed a pretrial order. That scheduling order set a jury trial for June 23, 2025, set a motion filing cut-off date of May 2, 2025, and set a final pretrial for June 5, 2025.

{¶23} On June 10, 2025, the trial court filed a judgment entry in which the court sua sponte vacated the June 23, 2025 trial date due to a scheduling conflict with another jury trial that same date. The trial court noted that the other case involved an incarcerated defendant and allegations of very serious crimes, and also that multiple physicians had been subpoenaed to testify at trial. In the June 10, 2025 judgment entry, the trial court scheduled a new trial date in this case for July 21, 2025.

{¶24} On July 15, 2025, the defense filed a motion requesting that the July 21, 2025 trial date be continued, on the basis that Estill had been working since his release on bond, had gained funds, and was planning to privately employ new counsel in the case.

{¶25} On July 15, 2025, the trial court filed a judgment entry denying the defense motion for a continuance of the trial date, finding the motion to be not well taken as it had been filed less than a week prior to the start of trial.

{¶26} On Monday, July 21, 2025, the jury trial proceeded as previously scheduled.

**{¶27}** On appeal, Estill argues in the first assignment of error that the trial court abused its discretion in denying the July 15, 2025 motion filed by his counsel that sought a continuance of the trial date six days prior to the start of trial.

**{¶28}** "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). An abuse of discretion means more than an error of law or judgment; rather, it means that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶29}** In general, "[t]he right to counsel of one's choice is an essential element of the Sixth Amendment right to have the assistance of counsel for one's defense." *State v. Frazier*, 2012-Ohio-1198, ¶ 26 (8th Dist.). This includes the right, when a defendant has the ability to retain his own attorney, to be represented by counsel of choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). However, the right to retained counsel of choice "is not absolute, * * * and courts have 'wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.'" *Frazier* at ¶ 26, quoting *Gonzalez-Lopez* at 152. In this respect, a trial court's "difficult responsibility of assembling witnesses, lawyers and jurors for trial 'counsels against continuances except for compelling reasons.'" *State v. Howard*, 2013-Ohio-2884, ¶ 40 (5th Dist.), quoting *Morris v. Slappy*, 461 U.S. 1, 11 (1983).

{¶30} In evaluating whether a trial court abused its discretion in denying a request for a continuance, some factors to be considered are: (1) the length of the delay requested, (2) whether other continuances have been requested and received, (3) the inconvenience to litigants, witnesses, opposing counsel, and the court, (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived, (5) whether the defendant contributed to the circumstance giving rise to the request for a continuance, and (6) any other relevant factors, depending on the unique facts of each case. *Unger*, *supra*, at 67-68.

{¶31} In the instant case, Estill moved for a continuance of the trial date by written motion on July 15, 2025. In that motion, Estill's counsel represented as follows:

> Since the Defendant has been released from custody, he has been working, has gained funds, and plans to employ Dustin Blake as an attorney, with whom he has already discussed his plans to hire him.
>
> There would be no prejudice to the Defendant, as he is not incarcerated. Additionally, Defense Counsel spoke with Counsel for the State who indicated they would have no objection to a continuance.
>
> Wherefore, the Defendant repsectfully [*sic*] requests a continuance in order to employ other Counsel for the current pending case and jury trial.

(7/15/25 Motion for Continuance, Docket No. 41).

{¶32} Under the circumstances presented by this case, we find no abuse of discretion in the trial court's denial of the continuance sought by the defense.

-11-

**{¶33}** As indicated above, the motion for continuance at issue here was filed on July 15, 2025, which was just six days – and only four working days – prior to the July 21, 2025 trial date. That trial date had been scheduled since June 10, 2025. At the time the motion for continuance was filed, the case had been pending for over three months, and the record overall reflects a concerted effort on the part of the trial court to efficiently manage its docket and move pending cases along to trial in a timely manner.

**{¶34}** Although the State of Ohio apparently did not oppose the requested continuance, a last-minute continuance of the trial would have potentially inconvenienced any subpoenaed witnesses, the prospective jurors, and the court.

**{¶35}** Additionally, the trial in this case had been continued and rescheduled once previously. While the first continuance was on the trial court's own motion, and not precipitated by the defense, the trial court was nonetheless justified in not wanting to delay the trial yet again.

**{¶36}** Finally, the motion seeking a continuance of the trial date did not specify the length of the delay requested. While the motion indicated that Estill wished to hire private counsel to represent him, and had apparently even been in contact with his desired attorney, it was clear from the motion that substitute counsel had not yet been retained. Thus, a reasonable inference could be made from the representations set forth in the motion that Estill did not, in fact, have the funds to hire new counsel at that time, and that the motion was filed for purposes of delay.

-12-

**{¶37}** For all of the reasons outlined, the trial court did not act unreasonably, arbitrarily, or unconscionably in overruling the motion seeking to continue the trial date.

**{¶38}** The first assignment of error is overruled.

*Second Assignment of Error*

**{¶39}** In the second assignment of error, Estill asserts that he was denied the effective assistance of counsel. Specifically, Estill argues that his counsel in the trial court was ineffective in not filing a motion to suppress inculpatory statements made by Estill to Lima Police Department Patrolman Trent Kunkleman. The statements at issue were made by Estill while speaking to Kunkleman at the hospital shortly after Estill had been transported there following his electric scooter accident. On appeal, Estill asserts that he was suffering a head injury at the time he spoke with Kunkleman, that the statements made to the officer were involuntary due to that injury, and that trial counsel was ineffective in failing to seek suppression of the statements on that basis.

**{¶40}** "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel in a criminal case, the defendant-appellant must establish that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable

representation. *State v. Bradley*, 42 Ohio St.3d 136, paragraph two of the syllabus (1989). Prejudice exists if there is "a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 2016-Ohio-8025, ¶ 138.

{¶41} "The 'failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel.'" *State v. Spaulding*, 2016-Ohio-8126, ¶ 94, quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "It is counsel's duty to make his own appraisal of the case and to decide when such motions are worth filing." *State v. Wilson*, 2001 WL 980810, *2 (3d Dist. Aug. 24, 2001).

{¶42} To prevail on an ineffective-counsel claim on the basis of failing to file a motion to suppress, the defendant-appellant must first "'prove that there was a basis to suppress the evidence in question[.]'" *Spaulding*, at ¶ 94, quoting *State v. Brown*, 2007-Ohio-4837, ¶ 65. The defendant-appellant must also demonstrate "a reasonable probability that had the evidence been suppressed, 'the result of the proceeding would have been different[.]'" *Spaulding*, at ¶ 94, quoting *Strickland*, *supra*, at 694.

{¶43} Such a claim of ineffective assistance of counsel in a direct appeal must be established by the evidence in the record. *State v. Jackson*, 2026-Ohio-1325, ¶ 14 (7th Dist.), citing *State v. Hartman*, 93 Ohio St.3d 274, 299 (2001) (if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal); *State v. Ishmail*, 54

Ohio St.2d 402, 406 (1978) (the appellate court is limited to what transpired as reflected by the record on direct appeal).

{¶44} As this Court has previously noted, "[t]he record developed at trial is generally inadequate to determine the validity of a suppression argument on appeal." *State v. Gervin*, 2016-Ohio-5670, ¶ 23 (3d Dist.). "[I]f the record is not clear or lacks sufficient evidence to demonstrate whether there is a reasonable probability that a suppression motion would have been successful, then a claim for ineffective counsel cannot be established. *State v. Hesseling*, 2025-Ohio-5102, ¶ 19 (3d Dist.), citing *Gervin*, at ¶ 23.

{¶45} In the instant case, as noted, Estill argues that his attorney should have moved to suppress Estill's statements to Patrolman Kunkleman on the basis that the statements were involuntarily made as a result of Estill's head injury.

{¶46} The question of whether a confession was voluntary implicates the due process clause of the Fourteenth Amendment. *State v. Barker*, 2016-Ohio-2708, ¶ 20, citing *Colorado v. Connelly*, 479 U.S. 157, 169-170 (1986). The voluntariness of a defendant's statement is determined from the totality of the circumstances. *State v. Slagle*, 65 Ohio St.3d 597, 600 (1992). A confession is involuntary if, on the totality of the circumstances, the defendant's will was overborne by the circumstances surrounding his giving of the confession. *Dickerson v. United States*, 530 U.S. 428, 434 (2000). The totality of the circumstances test for voluntariness takes into consideration both the characteristic of the accused and the specifics of

the interrogation. *Id.* Factors to be considered include the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *State v. Edwards*, 49 Ohio St.2d 31, 40-41 (1976).

{¶47} In this case, contrary to Estill's assertions on appeal, it is not clear from the record that a motion to suppress, based on a claim that Estill's statement was involuntary due to a serious head injury, would have had a reasonable probability of success. At trial, Estill made a passing, and non-testimonial, claim that he had sustained a concussion in the accident, and Patrolman Kunkleman acknowledged during cross-examination that Estill "appeared a little bit disoriented" when the two spoke at the hospital. (Tr., 322). However, there was no evidence introduced, medical or otherwise, that Estill had actually suffered a head injury of any sort, much less one of a nature that could have impacted the voluntariness of his statements to Kunkleman.

{¶48} Thus, on the basis of the record before us, Estill fails to demonstrate that the hypothetical motion to suppress would have been successful. Nor has Estill established a reasonable probability that excluding his statements to Kunkleman from evidence at trial would have resulted in an acquittal on the offense charged in the indictment. For those reasons, Estill's claim of ineffective assistance of counsel lacks merit.

{¶49} The second assignment of error is overruled.

*Third Assignment of Error*

**{¶50}** In the third assignment of error, Estill argues that the trial court erred by denying his pro se motion for substitute counsel, a request made by Estill on the eve of trial.

**{¶51}** As relevant to this claim, the record reflects that on Friday, July 18, 2025, at 4:18 p.m., Estill filed a pro se motion requesting that he be granted new court-appointed counsel or, alternatively, requesting that he be permitted to hire new counsel if able to do so within a reasonable period of time. The motion asserted that Estill no longer had confidence in his current counsel's ability to represent him effectively. In that motion, Estill also requested a continuance of the trial date in order to permit new counsel a chance to get up to speed in the case.

**{¶52}** On Monday, July 21, 2025, a jury trial was scheduled to begin in the case. However, prior to the commencement of jury selection that morning, and outside the presence of the prospective jurors, the trial court addressed the pro se motion that had been filed by Estill late the Friday before.

**{¶53}** In support of his motion requesting substitute counsel, Estill asserted that irreconcilable differences and a breakdown in communication had occurred between himself and his court-appointed attorney. Estill also claimed that, following a pretrial in the case, a male prosecutor had approached him outside the presence of his counsel and removed a document from the copy of the state's discovery response that Estill had in his possession at that time, after having

received it from his attorney. Estill argued that his court-appointed attorney had failed to properly investigate that incident and, further, that his attorney had refused to release another copy of the discovery to Estill's girlfriend, citing concerns that individuals upload discovery material to social media, which can jeopardize the defense's case. Estill expressed general dissatisfaction with his court-appointed counsel, claiming that sometimes he could not reach her on the phone and also that she would minimize or disregard ideas he suggested for use in his defense. Estill also questioned his attorney's litigation abilities.

{¶54} In response to the allegation relating to Estill's discovery materials, his attorney, Ms. McLean, informed the trial court that she had provided a discovery packet to Estill following an early pretrial in the case. McLean stated that, when pulling Estill's copy of the discovery materials out of her briefcase to give to him, she inadvertently included a subpoena that was unrelated to his case. McLean indicated that she then had the court officer, Deputy Biedenharn, go retrieve the subpoena from Estill, who was in custody at the time and was being escorted back to the jail after the pretrial. McLean stated that the only document she received from Deputy Biedenharn was the subpoena that she had asked him to retrieve. Attorney McLean further told the trial court that she was aware of Estill subsequently claiming someone had taken a piece of paper from his discovery packet, and that she had previously explained to him that it was a subpoena unrelated to his case.

McLean indicated that the day of trial was the first time Estill had ever claimed that a prosecutor had been involved.

{¶55} Deputy Biedenharn, who was present in the courtroom during the hearing on Estill's request for substitute counsel, confirmed McLean's account of the incident, and told the court that he had retrieved only the subpoena, and no other document, from Estill when asked to do so.

{¶56} Notwithstanding that explanation provided by Attorney McLean and Deputy Biedenharn, Estill continued to insist to the trial court that it was a male prosecutor, and not Deputy Biedenharn, who had approached him in the jail and removed a single piece of paper from his discovery packet. In response to that, trial counsel for the State of Ohio noted on the record that no male prosecutors from her office had been present at any of the pretrials.

{¶57} Upon further inquiry by the trial court, McLean then acknowledged that she had had prior meetings with Estill, had taken the opportunity to discuss the case with him, had reviewed with him the state's evidence, and discussed trial strategy. McLean indicated that, just the week prior, she had reviewed the discovery materials with Estill in preparation for the upcoming trial, and had discussed trial issues with him. McLean acknowledged that Estill had suggested things he believed could help his defense in the case, and she indicated that she had entertained those suggestions, evaluated them based on her legal knowledge, and then explained her judgment on the validity of those suggestions to Estill. Finally, McLean indicated

that she was prepared and ready to go to trial that day and that, in her professional opinion, the standard for a complete breakdown in communication between herself and Estill had not been met.

{¶58} After hearing from both Estill and his attorney, the trial court denied Estill's motion for substitute counsel and ordered that the trial would proceed that day as scheduled. In so ruling, the trial court specifically found that Estill's claim about a prosecutor having removed a document from Estill's discovery packet was simply not credible. The trial court further found that any disagreements between Estill and his counsel did not amount to a complete breakdown of communication, nor did the fact that McLean was not available to speak with Estill every time he called her office. The trial court noted that McLean was an experienced attorney who had tried many cases. The trial court also found that McLean acted appropriately in refusing to provide copies of the discovery materials to a third party at Estill's request, noting that McLean had no duty to do so and, moreover, was bound not do so when she believed that taking such action could negatively impact her client's defense.

{¶59} In *State v. Ream*, 2013-Ohio-4319 (3d Dist.), this Court set forth the legal principles applicable to a review of a trial court's decision on a request for substitute counsel as follows:

> Substitution of counsel is within the discretion of the trial court. *Wheat v. U.S.*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988); *State v. Jones*, 91 Ohio St.3d 335, 343-44, 2001 Ohio 57, 744

N.E.2d 1163 (2001). Therefore, we review the trial court's decision under the abuse of discretion standard. *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001 Ohio 112, 747 N.E.2d 765 (2001).

The Sixth Amendment guarantees indigent criminal defendants the right to competent counsel; however, this constitutional right does not extend to a right to counsel of the defendant's choosing. *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965). Further, the right to counsel does not include a right to a meaningful or peaceful relationship between the counsel and the defendant. *State v. Blankenship*, 102 Ohio App.3d 534, 558, 657 N.E.2d 559 (12th Dist. 1995), citing *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 75 L. Ed. 2d 610 (1983). As such, an indigent criminal defendant may only discharge a court-appointed attorney "upon a showing of good cause, such as a conflict of interest, a complete break-down in the attorney-client relationship or an irreconcilable conflict which leads to an apparently unjust result." *Blankenship* at 558; *see also State v. McCoy*, 2nd Dist. Greene No. 2003-CA-27, 2004-Ohio-266; *State v. White*, 3d Dist. Marion No. 9-98-52, 1999-Ohio-847 (Aug. 18, 1999).

*Id.*, at ¶¶ 91-92.

**{¶60}** It is well established that hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. *State v. Henness*, 79 Ohio St.3d 53, 65-66 (1997). Furthermore, "merely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." *State v. Glasure*, 132 Ohio App.3d 227, 239 (7th Dist. Feb. 2, 1999). In order for a criminal defendant to discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to

jeopardize the defendant's right to the effective assistance of counsel. *State v. Coleman*, 37 Ohio St.3d 286, paragraph four of the syllabus (1988).

{¶61} A defendant bears the burden of putting forth grounds in support of a claim that substitute counsel is warranted. *State v. Carter*, 128 Ohio App.3d 419, 423 (4th Dist. 1998). Once a defendant asserts facts that, if true, would require relief, the trial court must inquire into the complaint on the record. *Id.*, citing *State v. Deal*, 17 Ohio St.2d 17 (1969).

{¶62} Factors to consider in reviewing a trial court's denial of a defendant's request for substitute counsel include: "'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" *State v. Jones*, 91 Ohio St.3d 335, 342 (2001), quoting *United States v. Jennings*, 83 F.3d 145, 148 (C.A.6, 1996). Additionally, when the timing of a request for new counsel is an issue, a trial court may consider whether the defendant's request for new counsel was made in bad faith. *See State v. Haberek*, 47 Ohio App.3d 35, 41 (8th Dist. 1988). A motion for new counsel made on the day of trial, "intimates such motion is made in bad faith for the purposes of delay." *Id.*

{¶63} In the instant case, upon applying those well-established legal principles to our review of the trial court's decision on Estill's motion for substitute counsel, we conclude that the trial court did not abuse its discretion in overruling

that motion. The motion was extremely untimely, having been filed at 4:18 p.m. on the Friday before the trial was scheduled to start the following Monday at 8:45 a.m. The trial court conducted a very thorough inquiry into the issues raised by the motion before rendering a decision thereon. Most importantly, the information presented at the hearing on the motion established that any conflict between Estill and his court-appointed attorney was not so great as to amount to a complete breakdown in communication between the two. Put another way, it was not established that an irreconcilable conflict existed that would have jeopardized Estill's right to the effective assistance of counsel. Accordingly, the trial court did not act unreasonably or arbitrarily or unconscionably in denying Estill's request for substitute counsel.

{¶64} The third assignment of error is overruled.

*Fourth and Fifth Assignments of Error*

{¶65} In the fourth assignment of error, Estill argues that his conviction for Aggravated Possession of Drugs was not based on sufficient evidence. In the fifth assignment of error, Estill argues that his conviction for Aggravated Possession of Drugs was against the manifest weight of the evidence. As the fourth and fifth assignments of error both require a review of the evidence presented at trial in light of the statutory elements of the crime at issue, albeit with differing standards of review, we shall jointly address those assignments of error.

**{¶66}** It is well established that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, paragraph two of the syllabus (1997).

**{¶67}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "'In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *State v. Williams*, 2024-Ohio 2307, ¶ 21 (3d Dist.), quoting *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

**{¶68}** By contrast, when determining whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, *supra*, at 387. In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created

-24-

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Nevertheless, when assessing a manifest-weight challenge, a reviewing court must still allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. Stewart*, 2023-Ohio-253, ¶ 11 (3d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

{¶69} In the instant case, Estill was convicted of Aggravated Possession of Drugs in violation of R.C. 2925.11(A), which provides in relevant part that "[n]o person shall knowingly * * * possess * * * a controlled substance * * *." The indictment further alleged, and the jury found beyond a reasonable doubt, that the controlled substance possessed by Estill was methamphetamine, in a weight equal to or exceeding the bulk amount.

{¶70} On appeal, Estill argues in the fourth assignment of error that the evidence at trial was insufficient to prove that he knowingly possessed the methamphetamine at issue. Similarly, in the fifth assignment of error, Estill asserts that his conviction was against the manifest weight of the evidence as to the issue of whether he knowingly possessed the methamphetamine.

**{¶71}** R.C. 2901.22(B) defines the culpable mental state of "knowingly", and provides:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶72}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 2012-Ohio-5235, ¶ 45 (3d Dist.), quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

**{¶73}** "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). "A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.*, citing *State v. Hankerson*, 70 Ohio St.2d 87, syllabus (1982). "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *Hankerson* at 91.

{¶74} "'Although a defendant's mere proximity to drugs is in itself insufficient to establish constructive possession, proximity to the drugs may constitute some evidence of constructive possession.'" *State v. McClain*, 2020-Ohio-1436, ¶ 46 (3d Dist.), quoting *State v. Brown*, 2009-Ohio-5390, ¶ 20 (4th Dist.). "'Therefore, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.'" *Id.*

{¶75} Finally, "'the State may prove * * * constructive possession of contraband by circumstantial evidence alone.'" *McClain*, at ¶ 45, quoting *Bustamante*, *supra*, at ¶ 25.

{¶76} In the instant case, as to the fourth assignment of error, this Court's review of the record reflects that the evidence introduced at trial was sufficient to prove that Estill knowingly possessed the methamphetamine at issue. Estill was the owner, operator, and sole rider of the motor scooter in which, circumstantially, the evidence established that the methamphetamine was being stored and transported on the date in question. Estill was observed at the scene of the accident sitting in the street amongst the debris of the wrecked electric scooter, and the methamphetamine was discovered just shortly thereafter in the same location. When speaking with Patrolman Kunkleman at the hospital after the accident, Estill also tacitly acknowledged that the methamphetamine was his.

{¶77} Upon that evidence, a trier of fact could reasonably conclude that Estill was conscious of the presence of the methamphetamine and that, as the owner and sole occupant of the scooter in which the methamphetamine had been located, he exercised dominion and control over the cocaine. Particularly when examining the evidence in a light most favorable to the prosecution, we conclude that the State of Ohio produced sufficient evidence to support Estill's conviction. The fourth assignment of error is therefore overruled.

{¶78} In support of the manifest-weight claim raised in the fifth assignment of error, Estill argues that certain testimony given by Patrolman Kunkleman during cross-examination at trial, with regard to his actions in locating the methamphetamine, was inconsistent and contradictory.

{¶79} With regard to this issue, the trial record reflects that during Kunkleman's cross-examination, the officer acknowledged that the photographs showing the methamphetamine amongst the wrecked scooter and its debris were taken after he had picked up the second baggie of drugs and then put it back in the same general location where it had been found. Kunkleman also testified that, while he questioned other persons at the accident scene about the accident, he did not question anyone there about the drugs found by the wrecked scooter. However, Kunkleman explained that was primarily due to the fact that the scene was an accident scene, and not a crime scene, when he first arrived there. Kunkleman acknowledged that the fire department personnel also had access to the area where

the drugs were found. However, when asked if it was possible that someone else at the scene had thrown down the drugs near Estill, Kunkleman testified that it was possible but highly unlikely. Kunkleman explained that, based on his twenty-five years of law enforcement experience, it is very unlikely that a drug user would discard narcotics for no reason. Finally, Kunkleman acknowledged that he did not see Estill using drugs and did not observe Estill to throw any drugs on the ground.

**{¶80}** On appeal, Estill asserts that those aspects of Kunkleman's testimony served to outweigh the evidence establishing that Estill possessed the methamphetamine. We disagree.

**{¶81}** As to the relevance and weight, if any, to be given to any portions of Kunkleman's testimony, we note that the jury was able to see, hear, and evaluate the officer's testimony and was free to believe or disbelieve any or all of that testimony. *State v. Williams*, 2024-Ohio-2307, ¶ 27 (3d Dist.), citing *State v. Shockey*, 2024-Ohio-296, ¶ 24 (3d Dist.). More importantly, upon reviewing Kunkleman's cross-examination testimony, this Court finds that no aspect of that testimony – if believed – served to call into question, much less outweigh, the evidence outlined above that proved Estill's knowing possession of the methamphetamine found near or in the wreckage of the scooter he had been operating.

**{¶82}** In summary, following this Court's independent review of the record and weighing of the evidence and all reasonable inferences therefrom, we conclude

that this is not the exceptional case where the evidence weighed heavily against conviction, nor is there any indication that the jury lost its way in finding Estill guilty of Aggravated Possession of Drugs. Accordingly, the fifth assignment of error is also overruled.

*Conclusion*

**{¶83}** Having found no error prejudicial to the defendant-appellant, Nathaniel Estill, in the particulars assigned and argued, the judgment of conviction and sentence entered in the Allen County Court of Common Pleas is affirmed.

***Judgment affirmed.***

**ZIMMERMAN, P.J., and MILLER, J., concur.**

Case No. 1-25-42

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Juergen A. Waldick, Judge

_____
William R. Zimmerman, Judge

_____
Mark C. Miller, Judge

DATED:
/jlm